THE STATE OF TEXAS ON THE RELATION OF CLEVE O. BENNETT, ET AL. V. CLARENDON INDEPENDENT SCHOOL DISTRICT ET AL.

No. A-5753. Decided February 6, 1957.
(298 S.W. 2d Series 111).

**544**

R. Y. *King*, County Attorney of Donley County, of Claren-
don, *S. E. Fish*, of Amarillo, *Smith, Teed, Wade & Waters* and
*Arthur M. Teed*, all of Pampa, for petitioners.

The Court of Civil Appeals erred in holding that the State
had not been a party to the suit; that the State was not repre-
sented in the suit and that the trial court did not have juris-
diction. State ex rel Baughman v. Woodruff, 97 S.W. 2d 778
and 106 S.W. 2d 1088; Staoles v. State, 245 S.W. 639; Pease
v. State, 228 S.W. 269.

*Porter & Lowe* and *J. R. Porter*, all of Clarendon, for re-
spondents.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Over a contest of our jurisdiction based on the "election
contest" subdivision of Article 1821, Vernon's Texas Civ. Stats.[1],

[1]"Art. 1821. Except as herein otherwise provided, the judgments of the
Courts of Civil Appeals shall be conclusive on the law and facts, nor shall a writ
of error be allowed thereto from the Supreme Court in the following cases,
to wit:

     \*    \*    \*    \*

"4. All cases of contested elections of every character other than for State
officers, except where the validity of a statute is questioned by the decision.

     \*    \*    \*

"It is provided, however, that nothing contained herein shall be construed to
deprive the Supreme Court of jurisdiction of any case brought to the Court of
Civil Appeals from an appealable judgment of the trial court; in which the judges
of the Courts of Civil Appeals may disagree upon any question of law material
to the decision, or in which one of the Courts of Civil Appeals holds differently
from a prior decision of another Court of Civil Appeals or of the Supreme Court
upon a question of law as provided for in Subdivisions (1) and (2) of Article
1728." (As amended by Acts 1953, 53rd Leg., p. 1026, Ch. 424, Sec. 2.)

we granted this writ of error to review the action of the Court of Civil Appeals in affirming the dismissal of the suit by the trial court on the ground that, while the action was one of *quo warranto* in the name of the State to test the validity of a school district consolidation, the State was, in effect, not validly a party. For the opinion of the court below, see 287 S.W. 2d 279. The cause was submitted to us without oral argument.

As to the jurisdictional contest, extended consideration thereof following our granting of the writ confirms our original view that the case is not one final in the Court of Civil Appeals, notwithstanding the contention that the consolidation election was void and notwithstanding absence of a dissent below and of any claim that the decision involves "State officers" or "the validity of a statute" or a conflict with any prior holding of a civil appellate court of this State. Our holding is, in brief, that the case, by its nature, does not come within the statutory phrase "contested elections of every character."

The suit was filed in the district court of Armstrong County attacking the consolidation of Clarendon Independent School District (of Donley and Briscoe Counties) with Goodnight Independent School District (of Armstrong County) into a "purported" district called Clarendon Consolidated Independent School District, these districts, their respective trustees and divers other local school authorities being the respondents in the trial court, successful appellees in the appellate court, and accordingly our respondents here.

The relators, Bennett *et al.,* who, in the name of the State, sued below and seek relief here, are qualified voters and taxpayers residing in Goodnight Independent School District above named. The State appears—to such extent as it may or did— through the county attorney of Armstrong County (Goodnight I.S.D.) in the early stages of the case and thereafter (following uncontested transfer to the District Court of Donley County upon plea of privilege) through the county attorney of Donley County.

The alleged grounds of the suit were that the consolidation proceedings, including the successful consolidation election, were unauthorized by law and void in the following respects: that the appropriate consolidation statute, Art. 2806, Vernon's Texas Civ. Stats., authorized the election and other proceedings only in the event the districts to be consolidated were contiguous; that the two districts in question were contiguous only in the improper sense of having been purportedly made so by

the arbitrary and unlawful act of the County School Trustees of Donley County (in which part of Clarendon I.S.D. lay) in purporting to annex to Clarendon I.S.D., under Art. 2742f, Vernon's Texas Civ. Stats., an area of some 5 miles width, then being part of Ashtola Common School District No. 17 and separating the two districts to be consolidated; that said area, which was wild, inaccessible, inhabited by but one family and containing no scholastics, was purportedly annexed only a day or two prior to, and for the sole purpose of accomplishing, the purported consolidation, and moreover was annexed to the Clarendon district only by the action of the Donley County School Trustees and those of the Ashtola district without the consent of the County Trustees of Briscoe County, such consent being required by Art. 2744 of the statutes, since Clarendon I.S.D. lay in Briscoe County as well as in Donley County.

The prayer for relief included not only the usual one for ouster of the trustees of the purportedly consolidated district and judicial separation of the Goodnight district from the latter, but also "that the aforesaid elections held on December 12, 1953, in Goodnight Independent School District and in Clarendon Independent School District, respectively, with reference to the consolidation aforesaid, * * * be declared invalid and null and void."

■ Thus, in a sense, the case doubtless is one "of contested elections of every character." (See footnote 1.) It must also be conceded that no distinction may be drawn between *quo warranto* proceedings as such, and "election contests" in the narrow sense of a statutory proceeding under Chapter 9 of the Election Code [p. 180, Vol. 9 (1952), Vernon's Texas Civ. Stats.]. Cole v. State ex rel. Cobolini, 106 Texas 472, 170 S.W. 1036; State ex rel. Dunn v. Thompson, 88 Texas 228, 30 S.W. 1046. While in the former decision our opinion declining jurisdiction discusses largely the contention that the "election contest" provision of what is now Art. 1821, supra, had been repealed by implication, our own records show that the petitioner vigorously sought to uphold our jurisdiction on the theory that a *quo warranto* proceeding was not an election contest, although brought to test the result of an election. The earlier decision, expressly rejecting the same distinction, emphasizes the breadth of the statutory words "of every character." These decisions might be argued to imply that Art. 1821, supra, applies even to an injunction proceeding under Art. 1.07 of Chap. 1 of the Code, but that precise question we do not now have to decide.

Nor, despite conceivable inferences from the statutory words "other than for State *officers*," can we distinguish between elections for offices and those for other purposes, such as a school consolidation. De Shazo v. Webb, 131 Texas 108, 113 S.W. 2d 519. Indeed, Chap. 9 of the Election Code itself expressly contemplates contests of the latter type by its Art. 9.30.

The same chapter, by its Art. 9.15, would also seem to inhibit distinguishing between cases wherein it is sought merely to change the declared result of an election and those in which the election itself is attacked as a nullity. Moreover, in Kidd v. Rainey, 95 Texas 556, 68 S.W. 507, on an application for mandamus to require the Court of Civil Appeals to certify questions in a purported statutory election contest proceeding, we expressly treated the main suit (Kidd v. Truett, 28 Texas Civ. App. 618, 68 S.W. 310) as one of "contested elections" for purposes of our jurisdiction, although it sought to void the election in question on the ground that it was one to prohibit the sale of intoxicating liquors in a school district, a part of which lay within a precinct, in which there had already been a precinct election resulting in such prohibition. In other words, we held the suit to be an election contest for purposes of our jurisdiction despite the fact that it involved only the contention that no election could be called or held under the circumstances. According to our own records, the Kidd case came to us by means of a document which purported to be an application for writ of error with an alternative request for mandamus to require certification of questions in the event we should decline jurisdiction of the former. We did so decline jurisdiction by the usual type of order to that effect and then acted separately on the matter of mandamus by the opinion above cited.

Kidd v. Rainey, supra, appears to militate also against a distinction between cases involving matters incident to the actual voting and counting of the ballots and cases not involving such matters. Dickson v. Strickland, 114 Texas 176, 265 S.W. 1012, does likewise. In the latter we considered certified questions incident to an attempted injunction to keep an allegedly unqualified person off of the ballot as a candidate for governor in the general election, the suit being brought pursuant to the statutes corresponding to the present Arts. 1.05 and following of the Election Code, although Art. IV, Sec. 3 of the state constitution provided that, as to the offices of Governor and Lieutenant Governor, "Contested elections for either of said offices shall be determined by both houses of the legislature in joint session." We held that, notwithstanding the statute, the legis-

lature, rather than the courts, had jurisdiction of the controversy, and, in so holding, said:

"* * * the subject matter is everything which can be legally embraced in the phrase 'contested elections.'

"Such a contest may embrace every part of the *'process'* of electing a governor, for the reason that the *'election'* which may be contested is not merely the act of voting, but every step regulated by law, from the announcement of the candidate to the declaration of the result."

While the decision did not, of course, involve Art. 1821, supra, the broad interpretation given the constitutional phrase "contested elections" seem at variance with a narrower one for the similar but broader language used in Art. 1821.

On the other hand, we have decided in favor of our jurisdiction in two cases that doubtless require comment, to wit, Pease v. State ex rel. Sutherland, Texas Comm. App., 208 S.W. 162; and Trimmier v. Carlton, 116 Texas 572, 296 S.W. 1070.

The Pease case was one in *quo warranto* to oust Pease, the purportedly elected mayor of Corpus Christi, and install the relator, Sutherland, who was the opposing candidate, on the ground that, discounting the ballots cast for Pease due to fraudulent practices in his behalf in the election, the relator was the winner. The trial court judgment ousted Pease and installed Sutherland but, apparently due to lack of additional pleadings of the latter, did not award a recovery of the salary received by Pease since assuming the office in dispute. On appeal by Pease and cross assignment by the relator, Sutherland, the Court of Civil Appeals modified the judgment so as to allow the recovery of salary. On application by Pease for writ of error, and contest of our jurisdiction based on Cole v. State ex rel. Cobolini, supra, we took jurisdiction of and decided the petitioner's point directed against the award of salary without adequate pleadings, but declined jurisdiction as to all other issues. It was said that we "viewed the controversy, in virtue of the opinion of the Court of Civil Appeals, as dual in its nature and separable, presenting a question arising out of a case of contested election, and a question involving the recovery of the salary of the office."

Now obviously there could have been no salary claim but for the determination of the lower courts that the relator, and not Pease, was elected. And yet, while clearly declining to er-

view that determination for any purpose, we did review a question concerning one of its important consequences. The conclusion seems somewhat at odds with the rule, restated in Cone v. Cone, 153 Texas 149, 266 S.W. 2d 860, whereby in a suit for divorce we decline jurisdiction although the only matter in dispute on appeal is with regard to property rights.

Trimmier v. Carlton, supra, was similar to the instant case in that it involved an effort to defeat the incorporation of a water conservation district purportedly effected by an election ordered by the Board of Water Engineers, the plaintiffs and intervenors contending: that the Board had no authority in the premises; that the election petition had not been signed by the proper number of property owners; that the area of the district as stated in the election proceedings was not adequately described; and that the county judge who canvassed the votes erred in excluding those from the City of Ballinger, thereby causing the incorporation to carry. The case seems to have begun as a professed "election contest," with participation of the State, but the intervenors appeared individually and sought an injunction to restrain the purported district and its trustees from acting as such, the intervention being based on the same grounds aforementioned. Upon an amended pleading by the state, conceding that its appearance was merely *pro forma* and for the purpose of settling only the issue as to counting of the votes, the trial court dismissed it as a party, but thereafter proceeded to hold the incorporation void, apparently on all grounds in question. The State did not appeal, but the intervenors did, and the Court of Civil Appeals affirmed the trial court. The Supreme Court, in its opinion affirming the Court of Civil Appeals, made this explanation as to its jurisdiction:

"This case originated as an election contest, over which the Supreme Court ordinarily would not have jurisdiction. In the course of its progress, however, its *form* was changed, the election contest feature being eliminated." (Emphasis supplied.) [116 Texas 572, 296 S.W. 1072].

In the light of Cole v. State ex rel, Cobolini, State ex rel. Dunn v. Thompson, both supra, and the provisions of the Election Code, which contemplate proceedings of various forms, one may well question the implication that the mere form of the proceeding is always determinative, so that Art. 1821 would include only statutory election contests. But the result of the Trimmier case is that in a situation somewhat analogous to the one before us, we did take jurisdiction.

550

■ While it is difficult to state a rule for the instant case that will clearly fit the theory of each of the foregoing decisions or that will always be simple of application, we think it is undoubtedly true that not every suit, that includes questioning an election, is to be described as an "election contest." The validity of an election might be involved and yet be so incidental to the controversy as a whole that to call the case one of contested elections would be obviously to overemphasize one of its several features. For example, if there were a statute generally prohibiting the issuance of bonds by cities of the population of City X and another and later statute purportedly authorizing "cities" to issue bonds pursuant to a city election, and such an election were held in City X, resulting in favor of a bond issue, few people would think of the resultant controversy over the validity of the bonds as an election contest, although a decision of the statutory question would necessarily entail a corresponding result as to the validity of the election. The real controversy would be whether the particular city was authorized to issue bonds, whether by an election or otherwise.

We believe the instant case falls within the scope of the above example. The real issue as presented by the information is whether two school districts purportedly made contiguous by annexation of intervening territory under the circumstances pleaded may be consolidated under Art. 2806, supra, The decision of that question would settle the controversy, whether the election were otherwise valid or invalid, and the validity *vel non* of the election itself would thus appear to be merely incidental. Certainly there is a difference between such a situation and one in which the districts were admittedly contiguous in every proper sense, and the only controversy were whether the proper notice of the election was given or whether the election was otherwise conducted in a lawful manner. Kidd v. Rainey, supra, is, indeed, analogous, in a sense, to the instant case and reached a contrary result. However, the suit there involved was brought as a statutory election contest. See Kidd v. Truett, supra. It is doubtless reasonable for us to treat every statutory election contest as an election contest within the meaning of Art. 1821, although treating in the same manner certain other suits, which are not statutory election contests.

■ As to the action of the court below in upholding the dismissal of the suit on the plea in abatement of the respondents, it is the opinion of this court that such action was erroneous and that accordingly the case must be reversed and sent back for retrial and judgment on the merits.

The facts in connection with the dismissal are as follows: As before stated, the suit was originally filed in the district court of Armstrong County by the county attorney of that county on behalf of the State and on the relation of the individual relators, the judge having entered a formal order of leave to file by way of compliance with the leave requirement of the *quo warranto* statute (Art. 6253, Vernon's Texas Civ. Stats.). On an uncontested plea of privilege, the suit was thereafter transferred to the district court of Donley County. No formal additional leave to file was secured from the judge of the latter court, but the county attorney of Donley County did sign an amended information which was duly filed without objection from the respondents and under leave granted jointly to both sides to file amended pleadings. The respondents, who had apparently filed a plea in abatement in the court of Armstrong County, filed an amended plea in the court of Donley County several months after the transfer of the case, said plea alleging among other things that neither the State of Texas nor any of the State's attorneys were parties, but there being no allegation therein or otherwise prior to final judgment, that formal leave of the court of Donley County under Art. 6253, supra, had not been obtained. Following the filing of the amended plea in abatement and an amended answer by the respondents, the county attorney signed a supplemental petition in reply to said answer, and the same was duly filed.

Thereafter the case proceeded to trial, the judge evidently taking the plea in abatement "along with the case." The county attorney was not present for the trial, being out of the state at the time, although it does not appear that he would have attended or taken part but for some duty or emergency causing him to be thus absent. The trial was conducted for the relators by private counsel of the individual relators, who so acted with the previous consent of the absent county attorney.

After taking the case under advisement for some little time, the trial judge rendered his judgment sustaining the plea in abatement and dismissing the information on the ground of lack of jurisdiction. The county attorney is noted as excepting to the judgment and giving notice of appeal on behalf of the State. While the judgment does not expressly so state, its recitals suggest that the failure of the county attorney to "appear in court in person or in any manner take part in the trial" was the primary reason for the court's action.

Following the judgment, the county attorney signed, and

testified in a hearing upon, a motion to set aside the judgment. His testimony was, in substance, that he signed the information and otherwise participated in the case to the extent that he did participate, not because he considered that the State had any interest in the suit, but simply because he thought the individual relators were entitled to "have their day in court." We take this to mean that, so far as the county attorney was concerned, the participation of the State was purely for the convenience of the individual relators, although his conclusion thus to assist them was obviously one reached in the good faith exercise of his official judgment. He duly excepted to the action of the court in overruling the foregoing motion and thereafter signed all necessary documents and briefs on appeal, including the petition to this court for writ of error.

It is felt that the admitted absence of a motive on the part of the State to seek relief on its own account, as well as the lack of personal participation on the part of the State's attorney in the trial, are immaterial, the suit having been filed under the signature of the county attorney and prosecuted with his full consent. Lewright v. Bell, Attorney General, 94 Texas 556, 63 S.W. 623; Hermann v. Morlidge, 298 Ky. 632, 183 S.W. 2d 807; People ex rel. Peabody v. Attorney General, (N.Y.) 22 Barb. 114; People v. Fairchild, Attorney General, 67 N.Y. 334; Thompson v. Watson, 48 Ohio State 552, 31 N.E. 742; Everding v. McGinn, 23 Ore. 15, 35 Pac. 178; People v. Attorney General, 41 Mich. 728, 3 N.W. 205; Boyne v. Ryan, 100 Cal. 265, 34 Pac. 707; State ex rel. Rosbach v. Pratt, 68 Wash. 157, 122 Pac. 987; State ex rel. Black v. Taylor, 208 Mo. 442, 106 S.W. 1023.

■ The foregoing decisions, or practically all of them, reflect a well settled rule that an officer authorized to file *quo warranto* suits cannot be compelled to do so against his will by mandamus brought by interested private parties. In Boyne v. Ryan and State ex rel. Rosbach v. Pratt, supra, the suits sought to be required were suits for money rather than *quo warranto* suits, but the reasoning followed is the same as in other decisions cited. State ex rel. Black v. Taylor was a case in which the private relator sought to file a *quo warranto* suit somewhat similar the one before us without the signature of the district attorney, who not only refused to sign the information but later appeared in opposition to the proceeding. It was held that the trial court had no jurisdiction, the reasoning followed being more or less the same as in the mandamus cases. As to the above cited Michigan case of People v. Attorney General, there seems to be some

doubt as to whether in that state the discretion of the state reprsentative is always a defense to such mandamus proceedings. See Lamoreaux v. Ellis, 89 Mich. 146, 50 N.W. 812, and later decisions. In Illinois it appears that mandamus may issue under certain circumstances. People ex rel. Raster v. Healy, State's Attorney, 230 Ill. 280, 82 N.E. 599, 15 L.A.R. N.S. 603.

The principal reason given for the general rule above stated is that the determination of the state officer not to file suits such as those in *quo warranto* is a matter of discretion on his part which cannot be controlled by private parties or courts, although the contention has been advanced in the New York cases and some others that mandamus would be ineffective in any event, since, as a practical matter, it is ordinarily futile to attempt to require a lawyer to prosecute to good effect a suit which he did not wish to file in the first place.

Perhaps the leading case on the subject is the cited New York case of People ex rel. Peabody v. The Attorney General, the opinion of the court including the language quoted in the footnote.[2]

Consistently with the above-mentioned rule, it is clearly also the law in this state that, once the proceeding has been filed, the representative of the State has control of its prosecution.

---

[2]"There is nothing in the language of the statute which indicates an intention on the part of the legislature, when dispensing with the necessity of applying to the court for leave to commence the action, to surrnder all control over the proceeding. On the contrary, it is plain, I think, that it was intended that the attorney general should, upon the circumstances of each case, as it should be presented to him, determine whether the public interest requires that a suit should be prosecuted. Although private rights are always more or less involved in the action, yet it is, in substance as well as in form, an action on behalf of the people. It must be prosecuted in their name, and by the officer whose duty it is to protect their rights.

"The language of the statute, too, is guarded. An action *may* be brought by the attorney general. It is permissive. The power merelf is conferred: it is for him to determine whether a fit case is presented. As to every thing but the form, the proceeding stands now as it did at the common law. The usurpation of an office, though it frequently involves little else than private rights, is, in the eye of the law, a public offense. The only remedy is by an action in the name of the people. It is a public prosecution, instituted and conducted by the public prosecutor under his official obligation and responsibility. It is not the province of the court to control his discretion, or to authorize a private prosecutor to assume his office, and in his name to wield the power of public prosecutor.

"I know it may be said, perhaps in this very case, that with a fair show of right to an office, a party may be entirely remediless against an intruder. This may be so. It is quite possible that cases may arise in which the disturbing influence of party feeling may so affect the action of the attorney general as to result in great injustice to individuals. But this is a question for the consideration of the legislature, not for the court."

Staples v. State ex rel. King, 112 Texas 61, 245 S.W. 639; State ex rel. Steele v. Heath, Texas Civ. App., 44 S.W. 2d 398, writ of error refused. In the Steele case it was held that the representative of the state could, and did, defeat an appeal from a judgment against the relators by not joining in such appeal, although the individual relators contended that they became parties in their own right, once the suit was filed, and accordingly could appeal on their own account.

■ It is believed that the same discretionary authority, which exempts the State's attorney from being required by a court to bring the information and gives him the exclusive control over the suit, once it is filed, operates also to free him from court control either as to his object in prosecuting the suit or the manner in which he chooses to prosecute it. The extent to which such a rule would apply in case of bad faith on his part is a matter not before us, it being conceded that the county attorney acted in perfectly good faith throughout. His admittedly sole motive of giving the private relators "their day in court," as distinguished from seeking for the State relief in which he deemed it to have an interest, was thus not ground for dismissal of the suit. Still less ground was his failure to participate personally in the trial, when he undoubtedly wanted the case to be tried and had authorized counsel for the private relators to conduct the trial. The difference between such a course of conduct and one in which he might at a point refuse to allow the suit to proceed further in the State's name, is obvious.

■ If the Court of Civil Appeals meant to attach importance to the failure of the county attorney of Donley County to procure a formal order of leave to file from the district court of that county, after already procuring one from the district court of Armstrong County, we consider that this, too, was error. In this connection, there is nothing to indicate that the trial judge dismissed the suit on any such ground. On the other hand, if we concede that the court of Donley County likewise had to approve the filing of the information, we think his conduct in permitting the filing of the amended information and thereafter proceeding to trial on the merits satisfied the requirements of Art. 6253, supra, in this behalf.

■ While there has been a trial on the merits, and the petitioners request that we proceed to render such judgment as the trial court should have rendered, had it not erroneously sustained the plea in abatement of the respondents, we think the ends of justice will be better served, if the cause is remanded

for further proceedings. No doubt a retrial can be substantially abbreviated by agreement of the parties.

The judgments of both courts below are reversed, and the cause is remanded.

Opinion delivered February 6, 1957.