STATE of Missouri, ex inf. John M. DALTON, Attorney General of Missouri, ex rel. C. C. HOUGH, J. M. Stone, Earl Selby, Junior McKenzie, Ruth Ingram, and Joseph Arndt, Constituting the Board of Directors of Centralia Reorganized School District R–VI of Boone County, Missouri, Relators,

v.

Leonard ECKLEY, Leon Terry, Irvine Blackwell, Vessie Lee Miller, Successor in office to Raymond Bryson, Orma Mackey, Jr., Successor, to Charles Davenport, and George I. Neal, Jr., The Pretended Board of Directors of Consolidated School District No. C–II of Audrain County, Missouri, Respondents.

No. 48463.

Supreme Court of Missouri,

En Banc.

June 30, 1961.

Warren D. Welliver, Columbia, Alexander, Welliver & Wayland, Columbia, of counsel, for relators.

Latney Barnes, William W. Van Matre, Mexico, Barnes & Barnes, Mexico, Van Matre and Van Matre, Mexico, of counsel, for respondents.

WESTHUES, Judge.

This is a proceeding in Quo Warranto filed in this court by the State's Attorney General at the relation of the Board of Directors of Centralia Reorganized School District No. R–VI of Boone County, Missouri, against respondents, the members of the Board of Directors of Consolidated School District No. C–II of Audrain County, Missouri. The object of the suit is to determine the authority of respondents to act as a board of directors over certain territory which is claimed by the Centralia District while the Audrain County District claims the territory lies within its district.

A map illustrating the geographical situation may be found at page 148 of 322 S.W.2d. The territory in dispute includes tracts 1 and 2 as shown on that map. Tracts 3 and 4 comprise territory that remains in C–II and is not in dispute in this case. All of tracts 1, 2, 3, and 4 are located in Audrain County except the small portion in the northern part of tract 1 which lies in Monroe County.

We shall outline the occurrences which brought about the present proceeding. Those interested in a complete history will

find it in the case of England v. Eckley, Mo.App., 322 S.W.2d 146, and in England v. Eckley, Mo.Sup., 330 S.W.2d 738.

Originally, proceedings were instituted under the provisions of S.B. 108, Laws 1955, page 528, which is now, as amended in 1959, Sec. 165.294, RSMo 1959, V.A.M.S., to change the boundary line of R–VI by annexing thereto tracts 1 and 2 of C–II, as shown on the map referred to supra. An election was had in R–VI and the voters of that district voted in favor of the change. The Board of Directors of C–II refused to call an election as had been requested by petitioners who were residents of tracts 1 and 2. Two suits in mandamus were filed to compel the Board of C–II to call an election to determine the desire of the voters of C–II on the change of boundary. The trial court refused to compel the holding of an election. The St. Louis Court of Appeals affirmed. See England v. Eckley, 322 S.W.2d 146. The trial court and the Court of Appeals held that the territory involved could not be taken from C–II and annexed to R–VI under a proceeding as prescribed in Sec. 165.294, supra. The cause was transferred to this court and the Court en Banc ruled that the proceeding under Sec. 165.294 was proper. See England v. Eckley, 330 S.W.2d 738. The cause was remanded to the trial court with directions to issue an order directing the Board of C–II to call an election on the question of change of boundary. An election was held and the voters of C–II voted against the change proposed.

Thereafter, the authorities of R–VI, pursuant to the provisions of Sec. 165.294, supra, appealed and asked that the question be submitted to a Board of Arbitration. The Board of Arbitration consisted of W. R. Price, President of the Boone County Board of Education, Alvin W. Beamer, President of the Audrain County Board of Education, and Gene Church, Superintendent of the Schools at Wellsville, Missouri, appointed by the State Department of Education. After a hearing and a survey

of the situation, a vote of the Board of Arbitration resulted in W. R. Price and Gene Church voting in favor of the change in boundary and Alvin W. Beamer voting against the change. This decree was made on June 13, 1960. About June 20, 1960, the Board of C–II filed a petition in equity in the Boone County Circuit Court seeking to set aside the decree and findings of the arbitrators.

On August 25, 1960, the present proceeding in Quo Warranto was filed. This court, on August 26, 1960, issued a writ to respondents to "show by what authority you claim to hold, use and enjoy the rights, privileges and franchise of the Office aforesaid and by what authority you claim to exercise jurisdiction over those areas of Audrain County C–II School District which were transferred to Centralia R–VI School District by decree of the Board of Arbitration on June 13, 1960."

On September 10, 1960, respondents filed an answer to the above order to show cause. All questions raised by the answer were such that a determination thereof could be made from the admitted facts with the exception of one. In the answer, respondents stated that the decree of the arbitrators was void for the reason that Gene Church, who was appointed by the State Department of Education, was prejudiced and biased and known to be by the Department.

The cause was argued and submitted to this Court en Banc on January 26, 1961. The submission was set aside on that same day and the case was continued for the purpose of determining disputed factual matters.

On March 13, 1961, a Special Commissioner was appointed to hold hearings on the disputed issues and to report to this court his findings on such issues. Later, the parties filed a stipulation and a joint motion to set aside the order appointing a Special Commissioner. In the stipulation, it was agreed that the determination of

the question of the prejudice and bias of Gene Church be submitted to this court by depositions which were filed. In all other respects, the cause was to be submitted on the record as filed in this court. On April 20, 1961, the court sustained the joint motion and the cause was argued and submitted on May 9, 1961.

Respondents, under Point I of their brief, say that relators by this Quo Warranto proceeding seek not only to oust respondents as directors of C–II of jurisdiction over the disputed territory but also ask that those respondents who reside in the disputed territory be ousted as directors of C–II so that new directors may be selected in their stead. We find from the brief of relators that the above claim is correct.

Respondents further assert, under Point I, that relators also seek by this proceeding to determine who is entitled to State Aid based on the enumeration of students; to determine the right to tax money on deposit in a bank at Mexico, Missouri, although an interpleader suit is now pending to determine that question and for other relief.

Relators, in their brief, deny that they are asking any such relief.

The decision in this Quo Warranto proceeding may incidentally be a guide to determine the proper place in the jigsaw puzzle created where the various pieces of litigation and disputes that have been carved out of this whole controversy must fall, yet we cannot directly decide those questions. Our decision in this case must be restricted to the one issue, that is, whether respondents, as a board of directors of C–II, have jurisdiction over the disputed area. In other words, all we may decide is, were tracts 1 and 2, as shown on the map referred to supra, legally transferred to R–VI by the decree of the Board of Arbitration?

■ Respondents have questioned our jurisdiction to issue a Writ of Quo Warranto in this case. They say that a suit is pending in the Boone County Circuit Court to determine the validity of the findings of the arbitrators; that relators may have their day in court in that case; that the very issues presented to this court were raised in that suit. We think this court does have jurisdiction. This case involves the public interest in that two school districts are claiming jurisdiction over the same territory. The Attorney General of this state asked for the writ on behalf of one of the school districts. Quo Warranto may be resorted to in such a case even though a suit is pending in a lower court involving the same issues. State ex inf. McKittrick v. American Colony Ins. Co., 336 Mo. 406, 80 S.W.2d 876; State ex rel. Bennett v. Clarendon Independent School District, 156 Tex. 542, 298 S.W.2d 111; McFarlin v. State ex rel. Barnard, Tex.Civ.App., 272 S.W.2d 630. Quo Warranto is a proper remedy to test the jurisdiction of a school board over territory claimed by another school district. State ex rel. Dalton ex rel. Stonum v. Reorganized District No. 11, Mo., 307 S.W.2d 501, loc. cit. 509. We rule that this court is not without jurisdiction to entertain this action.

■ In Point II of respondents' brief, they state that "Notwithstanding the statement in Section 165.294 R.S.Mo. [V.A.M.S.] that the 'decision of the Board of Arbitration shall be final' the Supreme Court by its Rule 100.08 [V.A.M.R.] has provided that this harsh and patent finality is nevertheless subject to judicial inquiry and review." If respondents mean that courts may review the merits of changes in boundaries or the merits of a reorganization, they are mistaken. Consolidation and reorganization of existing school districts and the extent thereof as well as the proceedings to effect such changes are legislative matters and as a rule are not subject to review by the courts. England v. Eckley, 330 S.W.2d 738, loc. cit. 746, 747 (16–18). Laws governing reorganization and consolidation of school districts have been held to be constitutional. State ex rel. Reorganized School Dist. No. 4 of Jackson County v. Holmes, 360 Mo. 904, 231

S.W.2d 185. The intent and purpose of the laws were discussed and considered in the case of State ex rel. Rogersville Reorganized School District No. R–4 of Webster County v. Holmes, 363 Mo. 760, 253 S.W.2d 402. We have further held that a substantial compliance with the procedural steps prescibed to be taken is sufficient. State ex inf. Dalton ex rel. Reorganized School Dist. No. 4, Jackson County v. School District No. 30 of Independence, Mo.Sup., 333 S.W.2d 36, loc. cit. 39, 40 (2), and cases there cited.

As stated supra, all of the questions to be decided in this case may be ruled upon the record and the pleadings except one, that of the prejudice of Gene Church, the arbitrator appointed by the State Department of Education. The parties have submitted depositions of witnesses from which this court is to determine that question of fact. We have examined the depositions and noted that respondents rely mainly on the evidence of Alvin W. Beamer to prove that Mr. Church was prejudiced. This witness was one of the arbitrators and he voted not to make the change in the boundary.

■ We have read the depositions of the witnesses and have found no substantial evidence to support the contention that arbitrator Gene Church was in any way prejudiced. Alvin W. Beamer was called as a witness for respondents. We quote a portion of his evidence:

"Q. Yes. What did you say and what did Mr. Church say, in particular? A. Well, of course Mr. Church, as I said, was the chairman of the meeting and we more or less following the plan that he laid out for us. We first started making our discussion, before we made our decision, why, as I say, he said, 'We will lay everything on the table.'

"We discussed the whole problem pretty freely of the schools in Centralia and of the school buildings in C–II of the affected area. Then when we came down a little nearer to making our decision, Mr. Church more or less expressed his idea on the thing first. I would say the first thing he said on the thing, making our decision, was that 'I will have to base my decision on what I think is best for the children.' That was the first statement he made along that line. Now, Mr. Price, of course he agreed with it. Then—if you want me to go right on ahead?

"Q. Go ahead. A. It kinda all works in together. What I said, it was kind of a lengthy statement from right here on. I said, 'Mr. Church, you have been a very nice arbitration board member,' and I expressed it this way: I said, 'I think you have acted really,' I said, 'nicer than any arbitration board member I have ever met with' which he was. 'But,' I says, 'really you seem to have about the same feeling in this matter that most of the board members that are sent out by the State Board of Education have.'

"Of course, he wanted to know what that was. I says, 'Actually, it seems as though'—I have to think on this because this has been several months since this meeting and anything I say, I want to get it about like Mr. Church put it, although it might not be word for word. These are about the sum and substance of what I actually told him:

"I says, 'It seems to me that most of these arbitration board members that are sent out from the Board of Education seem to follow the same pattern.'

"He made this statement, he said, 'I have never talked to the State Board of Education about this at all.' He said, 'They merely just sent me a statement of what I was supposed to do, and for me to carry it on out, the whole plan.'

"But then a little further, when we discussed it, he said, 'Of course, they do know my feeling in school matters.' "

There was evidence that the State Department of Education sent to Mr. Church the instructions governing procedural matters of the arbitration and nothing more. Furthermore, there was no evidence tending to prove that the State Department of Education was for or against the change in the boundary.

Mr. Church testified that he did not make the statement attributed to him to the effect that "Of course, they (meaning the State Department) do know of my feeling in school matters."; that he had not at any time discussed this case with any member of the State Department. Further examination of this witness was as follows:

"Q. You say to decide the issues? What were those issues? A. Most issues on most boards of arbitration would be similar to the affair between the Centralia and the C–II.

"Q. On what basis would that be determined? A. I would determine it on the merits of the case and on evaluation of education that was taking place in the school districts, thinking in terms of the children first, the education they were getting, whether they were obtaining equal educational opportunities.

"Q. Anything else that would be a determining issue? A. I think that would be basic and foremost, the education of the children.

"Q. That was foremost, what would be secondly? A. I can think of nothing secondary to what is best for the children."

When asked what he considered a necessity, Mr. Church answered, "I don't understand what you mean by 'was it necessary?' Necessary from what standpoint? It was necessary from the benefit of the young-sters, I felt." It is evident that Mr. Church was qualified to act as one of the arbitrators. The point is therefore ruled against respondents.

■ In the answer to our order to show cause, respondents assert that Sec. 165.294, supra, was amended in 1959 so that when the voters of C–II voted on the change in boundary, they did so under a different law from that in force when R–VI voted on the question. The point was not briefed. However, the amendments changed procedural matters only and in no way affected the merits or substantial rights of any property owner living in the affected area. Originally, the section required a petition calling for an election to be signed by only "ten qualified voters who are taxpayers in any district affected." See Laws 1955, p. 528 (S.B. 108). Now, Sec. 165.294 RSMo 1959, as amended, requires such a petition to be signed by "ten per cent of the qualified voters who are taxpayers in any district." Another change was the 1955 Act provided that in case the districts affected lie in more than one county, then "the presidents of the county boards of education concerned together with one member appointed by the state board of education not a resident of the counties affected shall constitute a board of arbitration." The new or present Act, as amended, provides in substance that if the territory to be affected lies in three or more counties then the presidents of the county boards of the two counties containing the greater area affected, together with one member appointed by the state board of education, shall constitute the board of arbitration. As will be noted, those changes pertain to procedure only. We rule that the board of arbitration, in the case before us, was properly constituted and that it was not necessary, as contended by respondents in their answer, for the president of the Monroe County Board of Education to be a member of the board of arbitration. Sec. 165.294, supra. It was shown that only a very small area of the territory affected was situated in Monroe County.

We have examined the record and have found that the procedure and the action taken by the board of arbitrators were in substantial compliance with the provisions of the statute and sufficient in all respects.

Respondents have failed to show any legal authority to exercise jurisdiction as a board of directors over those areas of Audrain County C–II School District which were transferred to Centralia R–VI School District by the decree of the Board of Arbitration on June 13, 1960. Respondents should be ousted from exercising jurisdiction over the disputed area. A writ of ouster should therefore be issued against respondents.

It is so ordered.

All concur except HOLLINGSWORTH, J., not sitting.