In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00368-CV
_____

CITY OF PATTON VILLAGE, TEXAS, Appellant

V.

CONCERNED CITIZENS AGAINST WRONGFUL ANNEXATION
BY PATTON VILLAGE, RANDALL T. HYDE, JONATHAN FIFE,
AND HOLLY HESSONG, Appellees

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 20-02-02477-CV

**MEMORANDUM OPINION**

In this interlocutory appeal, the City of Patton Village (the "City"), appeals the denial of its plea to the jurisdiction in a lawsuit filed by a group of plaintiffs (the "Plaintiffs"), an unincorporated association named Concerned Citizens against Wrongful Annexation By Patton Village, and three owners whose lots were annexed by the City, Randall T. Hyde,

1

Jonathan Fife, and Holly Hessong.[1] In their petition, the Plaintiffs alleged that defects in the procedures followed when the City adopted two annexation ordinances, one in 1992 and the second in 2004, made the annexation ordinances invalid. According to the Plaintiffs, the property was not annexed because the two annexation ordinances were void, leaving the areas the City annexed including the Plaintiffs' lots outside the then existing territorial boundaries of the City.

In response to the suit, the City filed a plea to the jurisdiction. In its plea, the City asserted that the statutes of limitations that applied to the Plaintiffs' claims were statutory prerequisites to the court's right to maintain jurisdiction over the Plaintiffs' suit against the City, a governmental entity. And it asserted the statutes of limitation as affirmative defenses to the Plaintiffs' claims. The trial court considered the City's plea by submission and signed an order denying the plea. After that, the City filed a timely notice of appeal. We note our jurisdiction over the parties and the appeal.[2]

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(8) (authorizing interlocutory appeal from denial of a plea to the jurisdiction).
[2]*Id.*

On appeal, the City challenges Hyde's, Fife's, and Hessong's standing to challenge the validity of the 1992 and 2004 annexation ordinances. The City also challenges the trial court's exercise of jurisdiction over Hyde's, Fife's, and Hessong's annexation claims. According to the City, the statutes of limitations that apply to the Plaintiffs' claims are jurisdictional prerequisites to the Plaintiffs' right to maintain their suit. And for the first time, the City asserts the trial court lacks jurisdiction over Hyde's, Fife's, and Hessong's statutory- and governmental-takings claims.

Turning to the claims of Concerned Citizens, the City argues that the various statutes of limitations that apply to the Plaintiffs' claims bar all claims asserted by Concerned Citizens. The City also argues that the statutes of limitation are jurisdictional prerequisites as to Concerned Citizens claims too, which bars Concerned Citizens from suing because it didn't sue the City until 2020, long after the statute of limitations that apply to any claims possibly held by the homeowners they represent had expired.

Given the allegations in the Plaintiffs Original Petition, their live pleading, we disagree with the Plaintiffs that the 1992 and 2004

3

Ordinances are void. We further conclude the Plaintiffs may not, more than a decade after the annexation Ordinances were passed, challenge the validity of the ordinances when they failed to establish the Ordinances are void. Without establishing the Ordinances are void or that Local Government Code Chapter 43.908's limited waiver of immunity applies, the trial court did not have jurisdiction over the Plaintiffs' claims challenging the validity of the Ordinances at issue here.[3] As we explain below, the Plaintiffs failed to establish the trial court had jurisdiction over their claims, so we reverse the trial court's order denying the City's plea.

I.    Background

The City of Patton Village is a Type A general-law municipality, located in Montgomery County. In July 1992, the City passed Ordinance 92-003 (the 1992 Ordinance), annexing a tract of property connected by a road leading into the subdivision to what was then the City's eastern boundary, Tram Road. Through the 1992 Ordinance, the City proclaimed it was annexing Section #1 of King's Country Estates, a subdivision of 186.2875 acres in Block A-552, Montgomery County, in the W.S. Taylor

_____

[3]Tex. Loc. Gov't Code Ann. § 43.908.

4

Survey. A document attached to the 1992 Ordinance contains a legal description of the tract being annexed, a description consistent with the tract in the 1992 Ordinance. It describes the tract as a subdivision comprised of four blocks containing 40 lots, owned by King's Country Limited. When the City passed the 1992 Ordinance, however, the City's mayor, Kenneth Jenkins, failed to have the ordinance recorded in the official property records of Montgomery County within thirty days, which is the period a municipality is allowed by Texas law to record an annexation ordinance in the official property records maintained by the county or counties where the property that was annexed is located.[4]

In 2004, the City passed a second ordinance, Ordinance 2004-001, (the 2004 Ordinance). In the 2004 Ordinance, the City annexed another tract of property, a tract adjacent to what was then the City's existing eastern boundary, Tram Road. Like the tract the City annexed in 1992, the 2004 tract is in Block A-552 of the W.S. Taylor Survey. The 2004 tract also shares part of its eastern border with the western border of the tract annexed by the City in 1992. That said, the tract annexed in 2004 is a smaller tract, and it doesn't share its entire eastern border with the

_____

[4] *Id.* § 41.0015 (Notice of Municipal Boundary Change).

western border of the tract the City annexed in 1992. The 2004 Ordinance describes the area the City annexed that year as follows:

> The area is less than one half mile in width and extends from one half mile north of Short Street to one half mile south of Long Street. The Western boundary is Tram Road (City of Patton Village). The width of the area is one thousand four hundred five feet (plus or minus). The area is partially contiguous with King's Country Estates on the east (which was incorporated into Patton Village on 14 July 1992).[5]

We have included a screenshot of the map taken from the documents the City recorded in Montgomery County in 2004 after passing the 2004 Ordinance. The map depicts the area the City annexed in 1992, showing the area on the map in stripes. The area, which is striped, is also marked "SITE." While not the purpose of the map attached below, the map in general also shows the area the City annexed in 2004. Generally, the areas just above and below a narrow strip of land tying the western boundary of the area annexed in 2004 to Tram Road are included in the territory the City annexed in 2004.

---

[5]The "on the east" clause in the 2004 Ordinance is ambiguous given where the clause is placed. Yet from the maps and other evidence the parties attached to their motions for summary judgment, the "on the east" clause can be construed to mean: "The area [annexed in 1992] is partially contiguous [on its eastern border] with King's Country Estates[.]" To be clear, no one has ever argued the 2004 Ordinance describes a tract lying *east* of the tract the City annexed in 1992.



The documents the City filed of record in Montgomery County in 2004 include the following: (1) a copy of section 41.003 of the Local Government Code, which under circumstances the statute describes creates an irrebuttable presumption that the area a municipality annexed is a part of the municipality; (2) a lot and block map, which appears to have been taken from a survey map of Block A-552 of the W.S. Taylor Survey of the area describing the four blocks and 40 lots owned by King's Country Limited; (3) a certified copy of the City's 1992 Ordinance; (4) a description of the area the City annexed in 1992, which describes

7

the King's Country Estates as a subdivision of 186.2875 acres in Block A-552 of the W.S. Taylor Survey, consisting of 40 lots and four blocks owned by King's Country Limited; and (5) the map, a copy of which we have included above.

The 1992 Ordinance references a survey attached to the ordinance. The survey consists of the lot and block map of the King's Country Estates, which was taken from a survey of Block A-552. We have included the lot and block survey map the City filed of record in 2004 below.



In February 2020, Concerned Citizens, along with Fife, Hyde, and Hessong sued the City asking the trial court for a judgment declaring the 1992 and 2004 Ordinances void. According to the Plaintiffs, the descriptions in the 1992 and 2004 Ordinances used to describe the areas the City annexed do not close—meaning the borders around each area the City annexed do not describe shapes with sides that close on each of the shape's sides. The Plaintiffs' petition alleges that by failing to describe the areas in the annexations by using metes and bounds descriptions that close, the two Ordinances were void from the date they were passed. The Plaintiffs further alleged that the City of Patton Village never provided services to the residents living in the areas it annexed in 1992 or 2004.[6] The Plaintiffs' Original Petition raises five claims:

- A claim alleging the Ordinances are void, which Plaintiffs based on their theory the descriptions of the areas annexed are insufficient because the areas annexed are not described by their metes and bounds and do not describe shapes that close.
- A claim alleging the Ordinances are void, which the Plaintiffs based on their claim that the City has no records to prove those living in the areas annexed requested that the City annex the areas and no records to show that before annexing

_____

[6]According to the petition, "[t]he residents of the Area are provided water by T&W Water Service, required to have their own private propane, have independent septic systems not city sewer, etc."

9

the areas the City treated the areas as part of the City by providing the areas with services from the City.

- A constitutional-takings claim, which the Plaintiffs based on their theory that the City had "taken the tax revenues, permit fees, and other property of the Plaintiff[s] through what can only be styled as eminent domain or an inverse taking."
- A statutory-takings claim under the Private Real Property Rights Preservation Act (PRPRPA), an Act that allows private real property owners who comply with the requirements of the Act to sue political subdivisions to determine whether a "governmental action of a political subdivision results in a taking under this chapter."[7]
- A Uniform Declaratory Judgments Act (UDJA) claim, which Plaintiffs based on their claim that the 1992 and 2004 Ordinances, when passed, were void. Specifically, the Plaintiffs' UDJA claim requested the trial court to declare the 1992 and 2004 Ordinances "void and [to declare] the residents of the Area[s] were never properly annexed into Patton Village."[8]

When the City answered, it asserted governmental immunity prevented the Plaintiffs from suing the City on the claims in the Plaintiffs' petition. The City's amended answer, its live pleading alleges:

- Section 43.901 of the Local Government Code bars the Plaintiffs' claims because no one sued the City seeking to annul or review the 1992 or 2004 Ordinances within four years of the City's adoption of the Ordinances.
- Plaintiffs' takings claims are barred because their claims are untimely, so they are deemed to have consented to the annexations, and the Plaintiffs do not have takings claims because levying taxes and fees on the areas annexed do not constitute takings under the Texas Constitution.

---

[7]*See* Tex. Gov't Code Ann. § 2007.021.
[8]*See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a).

- Plaintiffs' takings claims are barred by the two-year statute of limitations.
- The Plaintiffs lack standing to bring statutory-takings claims against the City under the PRPRPA.
- Even assuming the PRPRPA waives the City's immunity from suit on one or more of the Plaintiffs' claims, the Plaintiffs' claims are still barred because they failed to sue the City within the 180-day period the PRPRPA provides for individuals to bring claims under the PRPRPA.
- Because Fife's, Hyde's, and Hessong's claims are barred as a matter of law, Concerned Citizens failed to establish it has standing to assert a derivative claim on anyone's behalf.
- And last, the Plaintiffs' claims are barred by the doctrines of laches, waiver, and estoppel.

After the City answered and before the City filed its plea to the jurisdiction, the Plaintiffs and the City filed motions for summary judgment. As relevant here, the summary-judgment evidence shows Hyde, Fife, and Hessong bought their lots long after the City annexed the areas where they live. The evidence shows the three individuals named as parties in the suit acquired their deeds to their respective lots as follows:

(1) Hyde ----- December 2013;
(2) Fife ----- November 2015; and
(3) Hessong ----- August 2014.

The summary-judgment evidence also shows no one before Hyde, Fife, and Hessong had ever challenged the validity of the City's 1992 and 2004 Ordinances.

11

When the trial court ruled on the motions for summary judgment, it signed an order finding the City's ordinances didn't meet the statutory requirements necessary "to constitute a legal annexation." Relying on that conclusion, the trial court granted the Plaintiffs' motion and denied the motion filed by the City. The trial court also granted the Plaintiffs' request for declaratory relief. In granting declaratory relief, the trial court declared in its order that those living in the areas the City annexed in 1992 and 2004 "are not, and have never been, residents" of the City. Still, because the trial court left open the Plaintiffs' claims for monetary damages, the trial court's orders on the parties' cross-motions for summary judgment were not final. As to the damages claims, the trial court said it would take the issue of damages up later and decide whether the Plaintiffs were entitled to damages "as a question of fact."[9]

Several weeks after the trial court's ruling on the motions for summary judgment, the City filed a plea to the jurisdiction. Mostly, the City argued the City's Ordinances were not void due to the lack of a metes and bounds description. And it argued that when the various statutes of

_____

[9]In the same order, the trial court denied the City's cross-motion for summary judgment.

limitations were applied to the Plaintiffs' claims, which the City argued were jurisdictional prerequisites to the Plaintiffs maintaining the suit, the Plaintiffs could not establish the legislature had waived the City's immunity from the Plaintiffs' claims. The statutes of limitation the City relied on in the trial court and that it relies on here are:

(1) The Local Government Code section 43.901, which creates a conclusive presumption that persons in an area annexed have consented to the area's annexation if two years have expired from the date an annexation ordinance is adopted and no action challenging the municipality's adoption of the ordinance was initiated within two years;

(2) The Local Government Code section 51.003, which creates a conclusive presumption of validity when no one challenges the validity of an ordinance by the third anniversary of the date the ordinance was passed; and

(3) The Texas Civil Practice and Remedies Code section 16.051, which creates a residual, four-year limitations period for actions to recover real property.[10]

The City argued that once the City established the legislature did not require municipalities to describe property lying within the municipality's extraterritorial jurisdiction by a metes and bounds description and that Plaintiffs' claims were untimely, the burden shifted

---

[10]Tex. Loc. Gov't Code Ann. §§ 43.901, 16.051; Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

to the Plaintiffs to demonstrate their claims were not barred by the limitations periods that applied to their claims.

When the Plaintiffs responded, they argued that because they were claiming the 1992 and 2004 Ordinances were void from the time the Ordinances were passed, the statutes of limitation the City the City relied on in its plea were irrelevant to their claims and the statutes did not bar their claims. To explain why the Ordinances were void, the Plaintiffs asserted the City's failure to describe the areas it had annexed by using a metes and bounds description that closed made both Ordinances void. The Plaintiffs also noted the City had not proven that it complied with other statutory requirements in proposing and adopting the Ordinances. According to the Plaintiffs, since the City failed to present evidence proving that it had complied with everything required of it by the legislature when exercising its powers of annexation, the City could not rely on the presumption that those living in the areas the City annexed had consented to being annexed. According to the Plaintiffs, the legislature could not have intended a conclusive presumption to arise

14

under section 43.901 when a municipality failed to comply with the notice and filing requirements of Chapter 43.[11]

As to the City's argument that the Ordinances must be conclusively presumed valid under the presumption created by Local Government Code section 51.003, the Plaintiffs responded stating section 51.003 does *not* apply to an act "that was void at the time it occurred."[12] Last, relying on their claim that the annexations are void, the Plaintiffs argued the residual, four-year statute of limitations applicable to suits to recover real property doesn't apply to actions against governmental entities when the act the governmental entity passed is void.

In November 2021 and without explanation, the trial court denied the City's plea to the jurisdiction. Shortly thereafter, the City filed its notice of appeal.[13]

II.    Standard of Review

On appeal, the parties agree the City is a Type A general-law municipality.[14] Under Texas law, municipalities are local governmental

---

[11]Tex. Loc. Gov't Code Ann. § 43.901.
[12]*Id.* § 51.003(b)(1).
[13]Tex. R. App. P. 26.1(b), 28.1(b).
[14]Tex. Loc. Gov't Code Ann. § 6.001.

entities, which enjoy immunity from suit unless their immunity from suit has been waived.[15] When immunity applies to a governmental entity, it "bars suit against the entity altogether."[16] Governmental entities may raise governmental immunity claims in several ways, which includes by filing a plea to the jurisdiction.[17]

We review a trial court's ruling on a plea to the jurisdiction as a question of law.[18] In a plea to the jurisdiction, governmental units "may challenge the pleadings, the existence of jurisdictional facts, or both."[19] When the governmental unit's plea challenges the existence of jurisdictional facts, the standard applicable to the motion mirrors the standard applicable to a party's traditional motion for summary judgment under Texas Rule of Civil Procedure 166a(c).[20] Thus, the

---

[15]*See id.* § 271.151(3); *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014).

[16]*Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

[17]*Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019).

[18]*Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

[19]*Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

[20]*See Sampson*, 500 S.W.3d at 384; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

governmental unit carries the initial burden to present evidence establishing the trial court does not have subject matter jurisdiction over the plaintiff's claims.[21] To avoid dismissal, the "plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction."[22]

In our review, we consider all evidence the parties filed in the trial court relevant to the jurisdictional issues to decide whether the trial court ruled properly on the plea.[23] "When the evidence submitted to support the plea implicates the merits of the case, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor."[24]

To decide whether the trial court erred in denying the City's plea, we must resolve three questions. First, we must decide whether the Local Government Code requires municipalities like the City to include metes and bounds descriptions when they annex property through their exercise of their extraterritorial powers of annexation. Second, based on

---

[21]*Sampson*, 500 S.W.3d at 384.
[22]*Id.*
[23]*Miranda*, 133 S.W.3d at 227-28.
[24]*Sampson*, 500 S.W.3d at 384.

the Plaintiffs' claim the Ordinances lack a sufficient description of the areas the City annexed, we must decide whether the 1992 Ordinance and the 2004 Ordinance are void because the areas the City annexed are not described by their metes and bounds with descriptions that close. Third, should we decide the Ordinances are not void, we must then decide whether the trial court had jurisdiction over any of the Plaintiffs' claims.

III.   Analysis

A. Is a metes and bounds description required by statute?

In the trial court, the Plaintiffs alleged the 1992 and 2004 annexations are void, not merely voidable, because the City didn't include metes and bounds descriptions of the property in the Ordinances it passed.[25] According to the Plaintiffs, because metes and bounds descriptions were not used, the areas the City annexed are not sufficiently described so that by following the angles and markers described in the Ordinance one may determine where the boundaries of the territory annexed are and that the boundaries of the territory annexed close.

_____

[25]*Metes and Bounds*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("The territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties.").

On appeal, the Plaintiffs rely on Local Government Code section 43.012 to support their claim that a metes and bounds description in an annexation ordinance is required. However, the Plaintiffs never cited that statute in their petition or in their motion for summary judgment. To be clear, section 43.012 requires a metes and bounds description in an annexation ordinance when an area the municipality annexes is an area that it *owns*. Section 43.012 provides:

> The governing body of a Type A general-law municipality by ordinance may annex [an] area that the municipality owns under the procedures prescribed by Subchapter C-1. The ordinance must describe the area by metes and bounds and must be entered in the minutes of the governing body.

But section 43.012 has no application here. No one alleged or proved the City owns any property lying in the area the City annexed in either 1992 or in 2004. The City didn't annex those areas under the power the legislature gave it to annex areas a municipality *owns*. Rather, the City annexed the areas at issue here under the powers the legislature delegated to municipalities to annex territory lying outside their existing boundaries but within their *extraterritorial jurisdiction*, an area lying within a defined distance from a municipalities' existing territorial

19

boundary—a distance that varies depending on the population of the municipality.[26]

For our purposes, the Plaintiffs never claimed the areas the City annexed in 1992 or 2004 don't lie within the City's extraterritorial jurisdiction. The Ordinances and evidence in the record show that when the City annexed the areas in 1992 and 2004, both areas had borders tied to the City's then existing eastern boundary, Tram Road.[27]

The effect of a municipality's annexation of property in its extraterritorial jurisdiction is set out in Local Government Code section 42.022, which provides:

> (a) When a municipality annexes an area, the extraterritorial jurisdiction of the municipality expands with the annexation to comprise, consistent with Section 42.021, the area around the new municipal boundaries.
> (b) The extraterritorial jurisdiction of a municipality may expand beyond the distance limitations imposed by Section

---

[26]Tex. Loc. Gov't Code Ann. § 42.021(a)(1) (one-half mile for municipalities like the City with fewer than 5,000 inhabitants). We note the Plaintiffs did not plead facts or claim that the City's 1992 Ordinance is arguably void, either in whole or in part, based on a claim that some of the territory the City annexed in 1992 lies outside the City's one-half mile extraterritorial jurisdiction. We express no opinion about whether such an argument might have merit, as appellate courts may not consider issues not raised in the trial court. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) (citing *In re B.L.D.*, 113 S.W.3d 340, 350-52 (Tex. 2003)).

[27]*Id.*

> 42.021 to include an area contiguous to the otherwise existing extraterritorial jurisdiction of the municipality if the owners of the area request the expansion.
>
> . . . [28]

The legislature also recognized a difference between a municipality's *owning* property in an area and a municipality's annexing property lying in its *extraterritorial jurisdiction.* Local Government Code section 43.014 makes that clear, as it states:

> A municipality may annex [an] area only in its extraterritorial jurisdiction unless the municipality owns the area.

Thus, in section 43.014 the legislature required a metes and bounds description when a municipality is annexing property it owns. However, the legislature did not include that same requirement in the statute authorizing municipalities to annex property lying in their extraterritorial jurisdiction.[29] The legislature clearly may choose to impose more stringent requirements on parties in some sections of a statute than it does in others.[30] But when it does so, we are not free to impose requirements on a party on a subject when the legislature chose

---

[28]Tex. Loc. Gov't Code Ann. § 42.022(a), (b).
[29]*Id.* §§ 42.021, 42.022.
[30]*See Waak v. Rodriguez,* 603 S.W.3d 103, 111 (Tex. 2020).

not to, as instead we must comply with the legislature's choice.[31] Thus, we reject the Plaintiffs argument claiming the Ordinances are void because they lack a metes and bounds description of the areas the City annexed.

Next, we turn to whether the jurisdictional evidence conclusively establishes the Ordinances describe boundaries that, to a reasonable degree of certainty, can be construed to close.[32] On appeal, the Plaintiffs argue the annexation ordinances don't close because the property the City annexed isn't described by metes and bounds. But we've already rejected that argument because the record shows the City annexed those areas by exercising its extraterritorial powers and not by exercising the power the legislature gave municipalities to annex areas they own. Except for the Plaintiffs' claim the boundaries are not described by their metes and bounds, they have never explained why the jurisdictional

---

[31]*See PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004) ("When the Legislature includes a right or remedy in one part of a code but omits it in another, that may be precisely what the Legislature intended. If so, we must honor that difference.").

[32]*See State ex rel. Rose v. City of La Porte*, 386 S.W.2d 782, 788-89 (Tex. 1965) (noting the accepted rules of construction for construing municipal ordinances apply to annexation ordinances, allowing a court to determine whether, after applying the rules of construction, the boundaries of the area annexed can be construed to close).

evidence does not conclusively establish the boundaries close in the respective territories annexed in 1992 and 2004. Still, because the trial court might have construed the Plaintiffs arguments to require both a metes and bounds description and a description describing a boundary that closed, we must decide whether the boundaries close.

B. Do the boundaries of the areas close?

Generally, when a court is asked to construe an ordinance annexing land, "[i]t is the function of a court to aid construction and validity of such description rather than to destroy them."[33] We start with the 1992 Ordinance. It defines the area annexed as section #1 King's Country Estates, 186.2875 acres of land in Block A-552 of the W.S. Taylor Survey of Montgomery County, consisting of 40 Lots, 4 blocks, owned by King's Country Limited. A map containing the names of some of the streets in Patton Village shows the general area the City annexed, and the map was attached to the 1992 Ordinance. The map, which was recorded at page 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 in the Montgomery County's real property records, identifies the area the City annexed in 1992 as "SITE." According to the

---

[33]*State ex rel. City of West Orange v. City of Orange*, 300 S.W.2d 705, 712 (Tex. Civ. App.—Beaumont 1957, writ ref'd n.r.e.).

recitals in the 1992 Ordinance, a survey of #1 King's Country Estates was attached to the ordinance. The survey referenced in the Ordinance appears to be a document copied from a survey of Block A-552, which depicts the part of Block A-552 containing the forty lots in King's Country Estates described in the 1992 Ordinance. We will refer to the document copied from the survey as the Lot and Block Survey, as it is the document the City recorded at page 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 in Montgomery County's real property records.

Importantly, the Lot and Block Survey contains latitude and longitude points, which may be used to establish the boundaries of the territory the City annexed in 1992. As relevant here, the Lot and Block Survey shows (1) exactly where the four corners are of the territory annexed in 1992, and (2) it shows the territory the City annexed has boundaries that close on four sides. Thus, the summary-judgment evidence shows the boundaries of the territory annexed in 1992 closes on four sides.

Even though one may not identify the boundaries of the area the City annexed in 2004 using the Lot and Block Survey alone, the summary-judgment evidence nonetheless shows the boundaries of that

area also closes on four sides. The western boundary of the 2004 annexation is Tram Road. In general, the 2004 Ordinance includes a call for distance describing that area's width, thus defining the area that was annexed eastern boundary as "one thousand four hundred five feet (plus or minus)" from what was then the City's existing eastern boundary, Tram Road. The latitude and longitude points on the Lot and Block Survey describe a large portion (but not all) of the eastern border of the area annexed in 2004, and the fact that this shared boundary is not exactly 1405 feet from Tram Road at every point is likely the reason there is a plus or minus reference in the 2004 Ordinance.

That said, the parts of the eastern boundary of the 2004 annexation not shown in the Lot and Block Survey can be located by using the calls for distance in the 2004 Ordinance, the western boundary Tram Road, and the latitude and longitude points in the Lot and Block Survey.[34]

---

[34]To locate the northeastern corner of the 2004 annexation, one must draw a horizontal line from a point lying one-half-mile north of Short Street and from that draw a line horizontally from west to east one-thousand-four-hundred five feet starting from Tram Road. To locate the southeastern corner of the 2004 annexation, one must draw a horizontal line from a point lying one-half-mile south of Long Street and from that draw a line horizontally from west to east one-thousand-four-hundred five feet starting from Tram Road. The remaining part of the eastern

Those remaining parts of the eastern boundary that are not shared with the 1992 territory lie north and south of Short Street and Long Street, respectively, each by one-half mile. Those eastern boundaries not shared with the 1992 territory are 1405 feet east of Tram Road and are one-half mile north of Short Street and one-half mile south of Long Street.

The northern and southern boundaries of the territory annexed in 2004 may also be derived from the calls for distance from Short Street and Long Steet by drawing a line to the eastern boundary described above. As described in the 2004 Ordinance, the northern point called for in the 2004 annexation is "one half mile north of Short Street[.]" The southern point called for in the 2004 Ordinance in finding the territory's southern boundary is "one half mile south of Long Street." To be sure, Short Street and Long Street dead-end at Tram Road, meaning the two streets don't cross Tram Road to the east. Yet by extending a hypothetical line from west to east across Tram Road by the call for distance (1405 feet from Tram Road), the northern and southern boundaries of the City's

border, not shown in the 1992 Lot and Block Survey, may be located with certainty by connecting those points to the 1992 annexation's northwestern and southwestern corners, which are identified by latitude and longitude points in the Lot and Block Survey.

26

annexation may be determined with reasonable certainty.[35] Because the evidence conclusively proves the boundaries of the respective areas the City annexed intersect and close, we conclude the City's Ordinances and annexations are not void.[36]

### C. If the annexations are not void, does the trial court have jurisdiction over the Plaintiffs' claims?

In the trial court and on appeal, the City argued the Plaintiffs lack standing to sue. We review rulings on standing under a de novo standard.[37]

Standing is a threshold component of subject matter jurisdiction and requires a real controversy between the parties.[38] Under Texas law, among the requirements of standing, a plaintiff must establish he was "*personally* injured—he must plead facts that demonstrate that he,

---

[35]*See City of Patton Village*, Google Maps, google.com/maps/place/City+of+Patton+Village (last visited October 10, 2022); Tex. R. Evid. 201(b); *Cent. Tex. Water Supply Corp. v. Kempner Water Supply Corp.*, 645 S.W.3d 799, 803 n.3 (Tex. 2022) (taking judicial notice of maps).

[36]*See City of Bridge City v. State ex rel. City of Port Arthur*, 792 S.W.2d 217, 235 (Tex. App.—Beaumont 1990, writ denied) (concluding that the boundaries of the land described "in annexation ordinance could be made, by construction, to be certain and was thus sufficient").

[37]*Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149-50 (Tex. 2012).

[38]*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

himself (rather than a third party or the public at large), suffered the injury."[39] Standing also requires that a court carefully examine "a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claim asserted."[40]

If the Plaintiffs had shown that the Ordinances were void, we would not question their right to complain about the Ordinances at issue here. But having concluded the Plaintiffs' failed to establish the Ordinances are void, the question is whether the Plaintiffs established standing on the record they created in the trial court on any of their claims.

The summary-judgment evidence shows no one challenged the City's 1992 or 2004 Ordinances until 2020, the year the Plaintiffs filed this suit. As previously noted, Hyde, Fife, and Hessong each bought their lots long after the City annexed the territory where they now live.[41] Since Plaintiffs failed to show that they brought their claims within two years of the date the Ordinances were adopted and failed to show the

---

[39]*Heckman*, 369 S.W.3d at 154; *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 241 (Tex. 2020) (cleaned up).

[40]*Heckman*, 369 S.W.3d at 156.

[41]We cannot determine from the summary-judgment evidence whether the individual lots the Plaintiffs now own were in the 1992 annexation, the 2004 annexation, or as between the three lots, included in both Ordinances.

Ordinances were challenged before they sued, we conclude they failed to establish the legislature waived the City's immunity from suit on their claims seeking to enforce the statutory requirements of Chapter 43.[42]

Turning to Concerned Citizens and the claims of any members of that organization who were never named or identified by the parties in the suit, the Plaintiffs failed to present any evidence in response to the challenge the City raised to Concerned Citizens' standing to show that any of Concerned Citizens' members owned lots when the City adopted the Ordinances at issue in the suit. Thus, the only evidence in the record shows that all Plaintiffs with an interest in the litigation bought lots more than two years after the City adopted the Ordinances at issue. Since the Ordinances are not void, and because the Ordinances were not challenged within two years after they were passed, we must presume the Plaintiffs predecessor in title consented to the "municipal ordinance

---

[42]Tex. Loc. Gov't Code Ann. §§ 43.901, 42.908(b). We have assumed without deciding the two-year period under Chapter 43 that applies to the presumption of consent did not begin until the City filed the Ordinances of record in 2004. But even when the Plaintiffs are given the benefit of any doubt about the effect of the City's delay in filing the 1992 Ordinance, the Plaintiffs do not have standing to assert Chapter 43 claims in this suit.

defining [the] boundaries of or annexing the area[.]"[43] It follows that Hyde's, Fife's and Hessong's predecessors in title and all Concerned Citizens' members consented to the City's adoption of the Ordinances at issue here.

Besides failing to prove the Ordinances were void and that any of the Plaintiffs held an ownership interest in the property the City annexed in 1992 or 2004, the Plaintiffs also failed to show their predecessor in title assigned any claims giving them a cause of action against the City. Under Texas law, "[t]he right to sue is a personal right that belongs to the person who owns the property at the time of the injury, and the right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action."[44] As to real property, "[i]t is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury."[45] For that reason, "[w]ithout a breach of a legal right belonging to the plaintiff no cause of

---

[43]Tex. Loc. Gov't Code Ann. § 43.901.

[44]*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 424 (Tex. 2010); *see also Hous. Water-Works Co. v. Kennedy*, 8 S.W. 36, 37 (Tex. 1888).

[45]*Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976).

action can accrue to his benefit."[46] As to standing, once the City alleged the Plaintiffs didn't have standing and established that Hyde, Fife, and Hessong didn't acquire the deeds to their lots until long after the ordinances at issue were adopted, the Plaintiffs—including Concerned Citizens—had the burden to demonstrate that a member of Concerned Citizens had standing to sue.[47]

Yet when they responded to the City's plea, the Plaintiffs failed to show that any member of Concerned Citizens owned his or her lot when the City annexed the territory at issue here. Concerned Citizens, like Fife, Hyde, and Hessong also never presented any evidence showing they held assignment from any previous owners who owned the lots when the City passed the Ordinances in 1992 or 2004. So, having concluded the Plaintiffs failed to establish a valid basis on which to claim the 1992 and 2004 Ordinances are void, we further conclude the only proper way available to challenge the annexations was through a quo warranto

---

[46]*Id.*

[47]*See Heckman*, 369 S.W.3d at 150 (burden of proof on plaintiff to establish standing); *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 308 (Tex. 2007) (to prove an association has standing, the members of the association must show they have standing to sue on their own); *Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (same).

31

proceeding—an action filed by the State challenging the City's allegedly irregular use of its annexation authority under the allegations in the petition the Plaintiffs filed below.[48]

We further conclude that the City is immune from the Plaintiffs' remaining claims. As to the Plaintiffs' PRPRPA claim, the Plaintiffs never alleged or claimed the territory the City annexed was beyond the City's extraterritorial jurisdiction. Under the PRPRPA, a municipality's exercise of its extraterritorial powers of annexation is excluded from the PRPRPA.[49] Despite the existence of a limited waiver of governmental immunity under the PRPRPA, nothing in the limited waiver of immunity in the PRPRPRA operates to waive a municipality's immunity from suit under the pleadings and summary-judgment evidence in the record before us here.[50]

The Declaratory Judgments Act claim also doesn't survive the City's plea. Parties may not use the Declaratory Judgments Act to circumvent the doctrine of sovereign immunity and recover damages

---

[48]*See Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436-37 (Tex. 1992).
[49]Tex. Loc. Gov't Code Ann. § 2007.003(a)(3).
[50]*Id.* § 2007.004(a).

from the state.[51] And because we have determined the trial court lacked jurisdiction over the Plaintiffs' claims challenging the Ordinances, the Plaintiffs cannot transform their claims into UDJA claims based on the pleadings they filed in the trial court to avoid the City's plea.[52] Because the 1992 and 2004 Ordinances are not void on this record, the Plaintiffs also don't have standing to challenge the Ordinances by bringing a claim under the UDJA.[53]

Turning to the Plaintiffs' constitutional-takings claims, the Plaintiffs globally alleged the City failed to strictly comply with the Local Government Code when annexing their lots and applying them to a public use. Yet the Plaintiffs alleged no facts to support their claim that the City made a public use of their lots. Moreover, the evidence in the record shows that Hyde, Fife, and Hessong live in homes built on their lots. The evidence shows the City collects ad valorem taxes on the appraised values assessed on the lots, values assigned by the Montgomery County Appraisal District on the improvements and lots

---

[51]*See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-56 (Tex. 2002).

[52]*See City of Hous. v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) (per curium).

[53]*See Alexander Oil*, 825 S.W.2d at 436-37.

Hyde, Fife, and Hessong own. The City also proved it has been levying ad valorem taxes on the areas since at least 2012 based on the affidavit of Sudie Dawson, the City's Secretary, who averred in her affidavit that she has personal knowledge of that fact since she began working for the City in 2012. In response to the City's evidence, the Plaintiffs didn't produce any controverting evidence to show that the City isn't collecting ad valorem taxes or to prove the City took their property and applied it to a public use.

To be sure, we fail to see how the Plaintiffs have takings claims when the evidence shows all the City has done is collect ad valorem taxes on their property. The Texas Supreme Court put it this way: "The constitutional inhibition against taking private property for public use without compensation has reference solely to the exercise of the right of eminent domain and not to taxation[.]"[54] Without proof, Plaintiffs' takings claims don't survive the City's plea when they did nothing more than prove the trial court with a conclusory allegation claiming the City took their property for public use.

---

[54]*State ex rel. Pan Am. Prod. Co. v. Texas City*, 303 S.W.2d 780, 782 (Tex. 1957).

IV.  Conclusion

To sum it up: We conclude: (1) Texas law does not require areas a municipality annexes lying in the municipality's extraterritorial jurisdiction to be described by its metes and bounds; (2) the summary-judgment evidence shows the boundaries of the areas the City annexed in 1992 and 2004 close; (3) the jurisdictional evidence shows the Plaintiffs failed to establish the legislature waived the City's immunity on the Plaintiffs' PRPRPA claim; (4) the Plaintiffs cannot circumvent the City's governmental immunity by recasting their claim as a claim under the UDJA; and (5) the jurisdictional evidence shows the Plaintiffs lack standing to sue the City on a constitutional-takings claim.[55] Accordingly, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing the suit without prejudice.[56]

---

[55]*See* Tex. Local Gov't Code Ann. §§ 43.001-.908; *see also Alexander Oil*, 825 S.W.2d at 436-37.

[56]To establish a court's jurisdiction, the plaintiffs must show that their injuries "will 'likely' . . . be 'redressed by a favorable decision.'" *Heckman*, 369 S.W.3d at 154-55 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). On the record the parties developed below, we cannot say the Plaintiffs could, if the case were remanded, establish their standing to sue. Yet because the record is not fully developed, we will dismiss the suit without prejudice so that if the Plaintiffs determine they have a good faith basis to claim the City's annexation ordinances are void

REVERSED AND RENDERED.

_____

HOLLIS HORTON
Justice

Submitted on March 23, 2022
Opinion Delivered November 3, 2022

Before Kreger, Horton and Johnson, JJ.

---

for a reason they didn't plead below, they may file a new suit and plead that claim. But because the petition now before us does not show the Plaintiffs even have a claim that could result in a favorable decision, we will dismiss and not remand.